FILED & ENTERED

JUL 10 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

|  |  |
|---|---|
| In re:<br><br>BRADLEY and ALLISON BARNES,<br><br>Debtors. | Case No. 2:19-bk-24787-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON DEBTORS' MOTION FOR AN ORDER TO SHOW CAUSE WHY WVBAGD, LLC AND ITS ATTORNEYS KEVIN EIKENBERRY, PETER J. VEIGUELA, AND FIDELITY NATIONAL LAW GROUP SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY [ECF 53]** |

Pending before the court is the motion of Bradley and Allison Barnes ("Debtors") for an Order to Show Cause Why WVBAGD, LLC and Its Attorneys Kevin Eikenberry, Peter J. Veiguela, and Fidelity National Law Group ("Respondents") Should Not Be Held in Contempt of Court for Violation of the Automatic Stay, Electronic Case Filing ("ECF") No. 53 (the "Motion"), filed on June 4, 2020, pursuant to Federal Rule of Bankruptcy Procedure 9020 and Local Bankruptcy Rule 9020-1.  In the Motion, Debtors complained that an email message (the "Email") was sent on April 30, 2020 by Respondent Kevin

1    Eikenberry on behalf of his client, Respondent WVBAGD, LLC, to the attorney for

2    Debtors in state court litigation, Mark L. Share, with "cc:" copies emailed to Debtors'

3    bankruptcy attorney, Susan I. Montgomery, the attorney representing Brittany Barnes

4    and Brooke Barnes, Debtor's adult children, Mitchell B. Ludwig, and the attorney

5    representing LOBAR, or The Lobar Properties, Inc., an entity affiliated with Debtors

6    owned by family members, Hillary Grossberg, in violation of the automatic stay in this

7    case.  Debtors contend that the Email to them through counsel "threatens the Debtors

8    and their family unless they pay money to settle pre-prepetition claims."  ECF 53 at 2.

9    In the Motion, Debtors further complained that on May 14, 2020, Respondents Peter J.

10    Veiguela and Fidelity National Law Group served a subpoena (the "Subpoena") on

11    Debtors in a state court lawsuit in which Debtors are not parties for the purpose of

12    obtaining Debtors' personal financial information, which information should only be

13    obtained through the bankruptcy court and which service allegedly violated the

14    automatic stay.  *Id.*

15        Although the Email was identified throughout the Motion as "Exhibit 1," a copy of

16    Exhibit 1 was not attached to the Motion.  The Subpoena was identified in the Motion as

17    "Exhibit 2" and was attached to the Motion.   The declaration of Debtor Bradley Barnes

18    attached to the Motion was not signed.  ECF 53 at 13-15.

19        On June 9, 2020, Debtors filed a stipulation between themselves and

20    Respondents Peter J. Veiguela and Fidelity National Law Group (the "Stipulation").

21    *Stipulation for Dismissal of Peter J. Veiguela and Fidelity National Law Group from*

22    *Motion for an Order to Show Cause re Contempt*, ECF 54.  In the Stipulation, Debtors

23    agreed to withdraw the Motion as against Mr. Veiguela and his law firm, Fidelity

24    National Law Group, on condition that Mr. Veiguela withdraw the subpoena he served

25    on Wells Fargo Bank, N.A. in WVBAGD, LLC's ("WVBAGD") state court action.  *Id*. at 2.

26    The Stipulation does not affect the Motion as against Respondents Kevin Eikenberry

27    ("Eikenberry") and WVBAGD.  Thus, the court construes the Motion as no longer

28    seeking relief against Mr. Veiguela and Fidelity National Law Group, and only against

1  Mr. Eikenberry and WVBAGD, both of whom are referred to as Respondents below.

2  On June 10, 2020, Respondent Eikenberry filed an opposition to the Motion (the

3  "Opposition") on behalf of himself and WVBAGD.  *Objection to Issuance of OSC Re*

4  *Contempt* and *Declaration of Kevin S. Eikenberry Objecting to Issuance of OSC Re*

5  *Contempt*, ECF 55.  In the Opposition, Respondents contend that the Motion included

6  an unsigned declaration by Mr. Barnes, which should not be considered by the court.

7  ECF 55 at 2.

8  On June 11, 2020, Debtors filed a duplicate Motion for an Order to Show Cause,

9  ECF 56, which contained a signed copy of Mr. Barnes's declaration.  *Id*.  In all other

10  respects, the duplicate Motion was the same as the original Motion, including the same

11  dates of execution by counsel and Mr. Barnes, and the lack of a copy of Exhibit 1.

12  Accordingly, the court will treat the duplicate Motion as a corrected version of the

13  Motion.

14  On June 12, 2020, Debtors filed their reply to the Opposition (the "Reply").  *Reply*

15  *to Opposition to Motion for OSC re Contempt Filed by Kevin Eikenberry*, ECF 57.

16  On June 15, 2020, the court entered an order for Debtors to file and serve the

17  missing Email, Exhibit 1, with an accompanying supplemental declaration to

18  authenticate the exhibit.  *Order Requiring Debtors to File Missing Exhibit 1 to Their*

19  *Amended Motion for an Order to Show Cause re Contempt for Violation of the*

20  *Automatic Stay and Extending Time for Respondent to Object to Issuance of an Order*

21  *to Show Cause re Contempt*, ECF 58. This order also permitted Respondents to raise

22  any objections to the issuance of an order to show cause within seven days from the

23  filing of the missing Exhibit 1.  *Id.* at 2.  On June 16, 2020, Debtors filed the missing

24  Exhibit 1 to the Motion ("Exhibit 1") but did not file a supplemental declaration

25  authenticating the exhibit, apparently relying upon the declarations of Mr. Barnes and

26  counsel in the Motion.  *Exhibit 1 to Debtors' Motion for OSC Re Contempt*, ECF 59.  On

27  June 23, 2020, Respondents filed their second opposition (the "Second Opposition"),

28  which incorporates by reference the June 10, 2020 Opposition.  *See Objection to*

1   *Issuance of OSC Re Contempt*, ECF 61.

2       Having carefully considered the Motion, Oppositions, Reply and Exhibit 1 to the

3   Motion, the court hereby rules as follows.

4   **DISCUSSION**

5      **I.  LEGAL STANDARD**

6       Bankruptcy courts have authority over civil contempt proceedings under 11

7   U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9020.  *Caldwell v. Unified*

8   *Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 284-285 (9th Cir. 1996).  In civil

9   contempt proceedings, "[t]he moving party has the burden of showing by clear and

10   convincing evidence that the contemnors violated a specific and definite order of the

11   court."  *Dyer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1190-1191 (9th Cir. 2003)

12   (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)).

13   Clear and convincing is a "higher standard than the preponderance of the evidence

14   standard but less stringent than beyond a reasonable doubt."  *United States v. Powers*,

15   629 F.2d 619, 626 n. 6 (9th Cir. 1980).

16       The automatic stay is a specific and definite order of the court effective at the

17   time a bankruptcy petition is filed that prohibits "any act to collect, assess, or recover a

18   claim against the debtor that arose before the commencement of the case."  11 U.S.C.

19   § 362(a)(6).  The scope of the automatic stay is broad and imposes an affirmative duty

20   of compliance on non-debtor parties.  *Hillis Motors, Inc. v. Hawaii Automobile Dealers'*

21   *Association*, 997 F.2d 581, 585 (9th Cir. 1993).

22       To be punishable by contempt, a violation of the automatic stay must be "willful."

23   *Johnson Environmental Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir.

24   1993).  A violation is "willful" if the respondent knew of the automatic stay and the

25   respondent's acts were intentional.  *Pace v. Taxel* (*In re Pace*), 67 F.3d 187, 191 (9th

26   Cir. 1995).  A fact-driven inquiry is used to determine whether a respondent's conduct

27   violated the automatic stay.  *Zotow v. Johnson (In re Zotow)*, 432 B.R. 252, 258 (9th Cir.

28   BAP 2010).  While not all communications between creditors and debtors are a violation

1    of the automatic stay, evidence of harassing or coercive language in such

2    communications demonstrates a stay violation.  *Id.*  As the Ninth Circuit concluded in

3    *Morgan Guaranty Trust Company of New York v. American Savings & Loan*

4    *Association*, 804 F.2d 1487 (9th Cir. 1986), "the language and purpose of section

5    362(a) do not bar mere requests for payment unless some element of coercion or

6    harassment is involved."  *Id.* at 1491.

7        In the *Morgan Guaranty Trust* case, the Ninth Circuit held that the respondent

8    bank's presentment of notes to the debtor, without an element of coercion or

9    harassment, did not violate the automatic stay.  *Id.*  While in the *Morgan Guaranty Trust*

10   case the allegedly contemptuous act was the bank's request for payment, in this case,

11   the allegedly contemptuous conduct was a settlement communication by a creditor to

12   debtors.  Although the court has not identified any authority of the Ninth Circuit binding

13   on this court that directly addresses whether a post-petition settlement communication

14   may violate the automatic stay, there is First and Seventh Circuit authority which has

15   specifically addressed the question of whether a post-petition settlement communication

16   violates the automatic stay by adopting the same "coercive" or "harassing" standard as

17   articulated by the Ninth Circuit in the *Morgan Guaranty Trust* case.

18       In *Jamo v. Katahdin Federal Credit Union (In re Jamo),* 283 F.3d 392 (1st Cir.

19   2002), the First Circuit held that  "a creditor may engage in post-petition negotiations

20   pertaining to a bankruptcy-related reaffirmation agreement so long as the creditor does

21   not engage in coercive or harassing tactics."  *Id.* at 399.  As set forth in *Diamond v.*

22   *Premier Capital, Inc. (In re Diamond)*, 346 F.3d 224 (1st Cir. 2003), the First Circuit

23   evaluates coerciveness by the immediateness of the threatened action and the context

24   in which the statement was made.  *Id*. at 227.  Similarly, in *In re Duke,* 79 F.3d 43 (7th

25   Cir. 1996), the Seventh Circuit held that a communication was not coercive or harassing

26   when there was "not a hint of unfavorable action that would be taken against [debtor] if

27   he [did] not [accept]" the offer.  *Id.* at 46.

28       ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  ANALYSIS

### Debtors Do Not Demonstrate Coercion or Harassment by Respondents to Prove Civil Contempt by Clear and Convincing Evidence

Debtors by their Motion have not demonstrated by clear and convincing evidence that Respondents violated the automatic stay by sending the April 30, 2020 settlement email.  There is no dispute that Respondents' action in the Email was "willful" as they acknowledge that they were aware of the automatic stay when Eikenberry intentionally sent the Email to counsel for Debtors and their adult children.  *Declaration of Kevin S. Eikenberry Objecting to Issuance of OSC Re Contempt*, ECF 55 at 7-8 (¶¶ 24, 27).  However, the issue presented here is whether the Email meets the "harassing" or "coercive" standard as set forth by the Ninth Circuit in the *Morgan Guaranty Trust* case. *Morgan Guaranty Trust Company of New York v. American Savings & Loan Association*, 804 F.2d at 1491.

In the case of *In re Parker*, No. 14-44083 CN, 2019 WL 386842 (Bankr. N.D. Cal. Jan. 29, 2019) ("*Parker*"), the bankruptcy court for the Northern District of California addressed the situation of whether a post-petition settlement communication violated the automatic stay and applied the coercive and harassing standard set forth in the *Morgan Guaranty Trust* case, noting "[f]ew cases directly address whether a post-petition offer to resolve prepetition debt violates the automatic stay."  *Id.* at *7-8.  The court in *Parker* held the communication from a creditor to a debtor to have been coercive or harassing when the creditor demanded payment and the sale of property, and threatened to pursue extensive litigation if the debtor did not accept the offer.  *Id.* (citing *inter alia, Morgan Guaranty Trust Co. v. American Savings & Loan Association*, 804 F.2d at 1491).  As the court observed, "[w]hat makes settlement negotiations problematic are their tone, context and content, and the inclusion of any threat of continued legal action outside the Bankruptcy Court should the debtor reject the offer." *Id.* at 7.  The court further observed that "[w]hether a communication is permissible or prohibited under Bankruptcy Code § 362(a) is a fact-driven inquiry, and it is not

1  susceptible to any bright line test."  *Id*. (citing *In re Zotow,* 432 B.R. at 258).  The court in

2  *Parker* held that the particular settlement communications demanding payment of

3  prepetition debts and threatening continued litigation to collect these debts were

4  coercive and harassing and a clear effort to collect on a prepetition debt in violation of

5  the automatic stay.  *Id*. at *7-8.  The coercive or harassing analysis turned on whether

6  the creditor made a direct and specific threat of further action against the debtor, if the

7  debtor did not accept the settlement offer.  *Id*.; *cf. In re Duke,* 79 F.3d at 46 (holding no

8  coercion or harassment when there was no direct or specific threat of further action if

9  the debtor did not accept the settlement offer).

10         Unlike the communications in *Parker*, which included clear threats and explicit

11  demands to collect on a prepetition debt, in this case, the Email did not contain any

12  immediate threat or improper attempt to collect.  As stated in the Email, Respondents

13  "request that the Barnes group discuss entering into and performing a global settlement

14  of all disputes . . . ."  *Exhibit 1*, ECF 59 at 18.  Later in the Email, Respondents stated

15  that they "request that both sides devote some time towards discussing a global

16  settlement that will, upon the performance of same, resolve all disputes and allow each

17  side to move forward to other more productive endeavors."  *Exhibit 1*, ECF 59 at 21.

18  While the Debtors argue the broad reach of the automatic stay, it would be

19  unreasonable for the court to find that a communication containing no attempt to collect

20  on a debt or threats to pursue further action was coercive or harassing to constitute a

21  violation of the automatic stay based on the legal standard set forth in the *Morgan*

22  *Guaranty Trust* case.  In the Email, Respondents did not make demands on Debtors for

23  payment or threaten to pursue further actions against Debtors if they did not settle.

24  Thus, the court determines that the statements made by Respondents to Debtors

25  through their counsel in the Email were not harassing or coercive.

26         Debtors contend that when Respondents stated in the Email that Respondents

27  "are continuing to pursue their remedies to collect the monies owed under the Dove

28  Street judgment and the Dove Street loan," this was a violation of the automatic stay.

*Motion*, ECF 53 at 9.  However, the court determines that this statement also does not

meet the "harassing" or "coercive" standard of the *Morgan Guaranty Trust* case,

especially in the context of when the statement was made on April 30, 2020.  First, the

statement was made while Respondent WVBAGD and its co-creditor, WVJP 2017-2,

LP, continued to make efforts to pursue the litigation relating to the Dove Street

judgment and Dove Street loan by first obtaining stay relief, and not acting in violation of

the stay.  On February 7, 2020, WVJP 2017-2, LP, filed a motion for relief from the

automatic stay to proceed with its pending appeal of an order of the state trial court

setting aside default judgments against Debtors in the Dove Street loan litigation.

*Motion for Relief from Automatic Stay*, ECF 20 at 4.  On February 25, 2020, Debtors

filed an opposition to this stay relief motion.  ECF 24.  On March 10, 2020, the court

denied this stay relief motion.  ECF 28.  On April 28, 2020, WVJP 2017-2, LP, filed a

renewed motion for stay relief to allow its appeal to proceed in the Dove Street loan

litigation.  ECF 41.  On May 5, 2020, Debtors again opposed WVJP 2017-2, LP's stay

relief motion.  ECF 44.  On May 22, 2020, the court reconsidered its prior position on

such relief and granted the renewed stay relief motion in part to allow WVJP 2017-2,

LP, to proceed with its appeal in the Dove Street loan litigation, but on condition that

there would be no enforcement of any judgment against Debtors or the bankruptcy

estate without further stay relief.  ECF 50.  In light of this context, Respondents'

recitation in the Email that they continue to pursue remedies in the state court matter is

not harassing or coercive as all parties, including Debtors, were aware of the continued

litigation in state courts, for which the court had granted stay relief, and Respondents

made no threats of additional action against Debtors in the Email.

Debtors further cited to an excerpt of the Email wherein Respondents stated "[a]

$5,000.00 bench warrant has been issued directed at Brad Barnes. . .as a result of his

failure to appear for his [Order of Examination] on 3-13-2020."  *Motion*, ECF 53 at 10.

The Email stated that it "sets forth a summary" of Respondents' "understanding of the

current status of all the various pending legal actions" for the purpose of requesting that

the "Barnes group discuss entering into and performing a global settlement." *Exhibit 1*,

ECF 59 at 18.  The text cited by Debtors is not a direct and specific threat of further

action by Respondents against Debtors if Debtors do not accept the settlement offer but

is a neutrally stated summary of the pending state court litigation.  Respondents have

previously sent similar summaries of pending litigation in settlement communications to

Debtors' state court counsel.  See *Exhibit "A" to Declaration of Kevin S. Eikenberry*

*Objecting to Issuance of OSC Re Contempt*, ECF 55 at 1-2 ("The Judgment provides for

an award of $2,102,150.56 against all ten judgment debtors listed in the Judgment,"

including Debtors.).  Here, Respondents' summary of pending litigation in the Email is

not harassing or coercive because it did not make demands on Debtors for payment or

threaten further actions against Debtors.

Not only do the excerpts of the Email identified in Debtors' Motion not meet the

"harassing" or "coercive" standard, none of the language in the Email meets that

standard.  The Email states that "[a]bsent a settlement WVBAGD. . . will fully litigate"

the validity and enforceability of the lien on Debtors' residence and "[a] judgment in

favor of WVBAGD. . .will increase the likelihood that [Debtors' residence] will be sold."

*Exhibit 1*, ECF 59 at 19.  However, unlike in *Parker*, where the settlement

communication contained an immediate threat and improper effort to collect a

prepetition debt if debtors did not accept the settlement offer, this statement in the Email

is a nonthreatening description of continuing litigation in the state court case.  The court

determines that these statements do not meet the harassing or coercive standard.

The context of the Email further shows that contempt through harassing or

coercive conduct has not been demonstrated by clear and convincing evidence.  S*ee In*

*re Parker*, 2019 WL 386842, at *7 (finding that language used in settlement negotiations

may violate the automatic stay if the tone, context and content, and inclusion of any

threat of continued legal action should the debtor reject the offer is deemed coercive).

As stated in the Email, it is an apparent "continuation of [Debtors' state court counsel

and Respondents'] previous discussions about settlement."  *Exhibit 1*, ECF 59 at 17.

1   The Email was not sent to Debtors, but to Debtors' counsel, including their bankruptcy

2   counsel who was also copied on the Email. *Id.*; *see also, Morgan Guaranty Trust Co. v.*

3   *American Savings and Loan Association,* 804 F.2d at 1491 (suggesting that a stay

4   violation is more likely to be indicated when the creditor communicates directly with the

5   debtor as opposed to counsel, citing *Brown v. Pennsylvania State Employees Credit*

6   *Union (In re Brown),* 49 B.R. 558, 561 (Bankr. M.D. Pa. 1985)). The tone and content of

7   the Email between counsel indicated the view of Eikenberry, the writer, on behalf of

8   Respondents that both sides were open to settlement communications.  The Email

9   merely described the multiple ongoing settlement discussions between the parties,

10  including a purported settlement offer from Debtors' state court attorney on June 21,

11  2019, which was rejected by Respondents.  *Id*.  As described in the Email, these

12  settlement discussions continued into the beginning of 2020, where Debtors' state court

13  attorney purportedly made another settlement offer to Respondents, which was also

14  rejected.  *Exhibit 1,* ECF 59. at 18.  As further described in the Email, the parties spoke

15  again about settlement, when Debtors' state court counsel purportedly suggested a

16  settlement in the "low six figure range."  *Id*.  The description in the Email of the multiple

17  prior settlement discussions between the parties supports Respondents' claim that the

18  Email was not intended to collect on any debt.  Accordingly, the context of the Email

19  supports Respondents' assertions that the Email did not violate the stay as a

20  communication to coerce or harass Debtors.

21        Even considering the statements in the Email identified by Debtors as

22  contemptuous in the aggregate, the Email did not violate the automatic stay under 11

23  U.S.C. § 362 because Respondents made clear in the Email that the communication

24  was only a request to begin settlement discussions rather than an attempt to collect on

25  a prepetition debt.  In the Email, Respondents requested that Debtors "continue

26  previous discussions about settlement" and "discuss entering into and performing a

27  global settlement."  *Exhibit 1*, ECF 59 at 17-18.  Later in the Email, Respondents

28  "request that both sides devote some time towards discussing a global settlement" that

would "allow each side to move forward to other more productive endeavors."  *Exhibit 1*,

ECF 59 at 21.  Respondents' request in the Email to continue a settlement discussion

that would benefit both the Debtors and Respondents was not threatening, coercive,

harassing, or otherwise, an attempt to collect on a debt.

In this court's view, preventing creditors from engaging in settlement negotiations

undermines the public policy objective of encouraging settlement instead of litigation.

*See In re Briggs*, 143 B.R. 438, 451 (Bankr. E.D. Mich. 1992).  If creditors are not

allowed to engage in preliminary settlement discussions, parties in interest would

otherwise have no alternatives to undertaking costly and time-consuming litigation.  *Id*.

at 452.  This would be contrary to the spirit of the Federal Rules of Bankruptcy

Procedure governing this litigation to construe, administer and employ the rules of

bankruptcy procedure "to secure the just, speedy, and inexpensive determination of

each and case and proceeding."  Federal Rule of Bankruptcy Procedure 1001.  Thus, a

non-coercive, non-harassing settlement communication on behalf of a creditor such as

we have here in the Email is not prohibited as being in violation of the automatic stay,

but is permitted if carefully done as here where the communication went to counsel

rather than directly to the debtors, contained no demands on the debtors for payment of

prepetition claims or threats of further actions against them and whatever actions that

had been taken and were being taken against the debtors were pursued only after stay

relief was obtained.

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       Accordingly, based on the foregoing, the court will deny the Motion for lack of good cause shown as required by Federal Rule of Bankruptcy Procedure 9020 and Local Bankruptcy Rule 9020-1.   A separate final order denying the Motion is being filed and entered concurrently herewith.

       IT IS SO ORDERED.

###

Date: July 10, 2020

Robert Kwan
United States Bankruptcy Judge